UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BENJAMIN LEE(#114229)

VERSUS                                        CIVIL ACTION

LOUISIANA DEPARTMENT OF                       NUMBER 11-138-JJB-SCR
CORRECTIONS, ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, December 5, 2011.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BENJAMIN LEE(#114229)

VERSUS                                  CIVIL ACTION

LOUISIANA DEPARTMENT OF                 NUMBER 11-138-JJB-SCR
CORRECTIONS, ET AL

## MAGISTRATE JUDGE'S REPORT

Before the court is the Defendants' Motion for Summary
Judgment. Record document number 11. The motion is opposed.[1]

Pro se plaintiff, an inmate confined at Louisiana State
Penitentiary, Angola, Louisiana, filed this action pursuant to 42
U.S.C. § 1983 against the Louisiana Department of Public Safety and
Corrections, Louisiana Department of Public Safety and Corrections
Secretary James LeBlanc, Warden N. Burl Cain, Asst. Warden Troy
Poret, Col. Jerry Sharp, Maj. Willie Richardson, Capt. Richard Hunt
and Legal Programs Director Trish Foster. Plaintiff alleged that
Maj. Richardson ordered him transferred to Hawk unit in retaliation
for refusing to withdraw an administrative grievance ("ARP"), Capt.
Hunt issued a false disciplinary report to him in retaliation for
refusing to withdraw an ARP, and Foster interfered with his access
to the courts, all in violation of his constitutional rights.

Defendants moved for summary judgment relying on a statement

---

[1] Record document number 13.

of undisputed facts, the affidavits of Tara Bonnette, Rhonda Weldon, Maj. Richardson, Capt. Hunt and Asst. Warden Poret, a copy of excerpts from the prisoner rule book, and the ARP records.

Plaintiff opposed the defendants motion for summary judgment relying on his sworn declaration, a copy of the Personal Property Storage Documentation form, a copy of the January 28, 2010 disciplinary report, a copy of a February 8, 2010 Emergency ARP, copies of letters to Warden Cain and Foster, a copy of an emergency ARP to Secretary LeBlanc, a copy of proof of exhaustion of ARP LSP-2010-0352, and a copy of the Hawk Unit log book.

## I. Background

Plaintiff alleged that he filed an ARP complaining about his assignment as a tier walker. The ARP was accepted and was assigned number LSP-2010-0071. Plaintiff alleged that on January 24, 2010, Capt. Hunt discussed the ARP with him and asked the plaintiff to withdraw it. Plaintiff alleged that he refused to withdraw the ARP and was allowed to return to his dormitory.

Plaintiff alleged that on January 28, 2010, he was instructed to meet with Maj. Richardson. Plaintiff alleged that Maj. Richardson inquired about ARP LSP-2010-0071 and advised the plaintiff to drop the ARP "if you know what's best." Plaintiff alleged that he refused to drop the ARP because he did not want the responsibilities associated with a tier walker job. Plaintiff

alleged that Maj. Richardson instructed him to pack his belongings and go to Hawk unit. Plaintiff alleged that Warden Poret and Col. Sharp were present during his discussion with Maj. Richardson and did nothing to intervene on his behalf.

Plaintiff alleged that he returned to his housing unit, packed his belongs and was transferred to Hawk unit and then to administrative segregation. Plaintiff alleged that on January 28, he was issued a false disciplinary report accusing him of defiance by Capt. Hunt in retaliation for refusing to withdraw ARP LSP-2010-0071.

Plaintiff alleged that he was subsequently found guilty of the disciplinary charges and was sentenced to a working cell block.

Plaintiff alleged that he filed an ARP which was accepted by prison officials on March 1, 2010 and assigned number LSP-2010-0352. Plaintiff alleged that Foster failed to acknowledge receipt of an amendment to ARP LSP-2010-0352 submitted on February 8, 2010. Plaintiff alleged that the supplement contained exhibits which would have proved the disciplinary report issued by Capt. Hunt was false. Plaintiff alleged that Foster conspired with the other defendants to prevent him from proving his claim that the disciplinary report was false by manipulating known loopholes in the ARP process.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c).

### B. Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, an unconsenting state is immune from suits seeking monetary damages brought in federal courts by her own citizens as well as citizens of another state. *Edelman v. Jordan*, 415 U.S. 659, 94 S.Ct. 1347 (1974). Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for deprivation of civil rights under color of state law. *See, Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666 (1976); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139 (1979); *Edelman v. Jordan, supra*. Thus, absent consent by the state or congressional action, a state is immune from a suit for damages. Louisiana has not waived her sovereign immunity under the Eleventh Amendment, and is immune from suit in this action. The shield of immunity extends to the Louisiana Department of Public Safety and Corrections as an agency of the state and to the institutions it

maintains. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312 (5th Cir. 1999); *Anderson v. Phelps*, 655 F.Supp. 560 (M.D. La. 1985).

To the extent the plaintiff seeks prospective injunctive relief, which is not barred by the Eleventh Amendment, he has failed to demonstrate a deprivation of constitutional rights pursuant to an official state policy. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).

**C. Failure to Exhaust Administrative Remedies**

Defendants argued that the plaintiff failed to exhaust available administrative remedies before filing suit regarding all of his claims against each defendant, except for his retaliation claim against Maj. Richardson.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated*

5

*in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

Plaintiff alleged in the complaint that he exhausted available administrative remedies against the defendants in ARP LSP-2010-0352.[2]

The summary judgment evidence showed that the plaintiff filed ARP LSP-2010-0352 on February 2, 2010, specifically complaining

---

[2] Record document number 1, Complaint, p. 3.

that Maj. Richardson retaliated against him for refusing to withdraw ARP LSP-2010-0071.[3] Although the ARP mentioned that Maj. Richardson ordered the plaintiff to pack his belongings in the presence of Col. Sharp and Warden Poret, there is nothing in the ARP to put the remaining defendants on notice that the plaintiff was also accusing them of any wrongdoing.

Plaintiff argued in his memorandum in support of his Complaint that on February 8, 2010, he submitted an "amendment/supplement to LSP-2010-0352."[4] Plaintiff attached a copy of the purported amendment/supplement as an exhibit to the Complaint.[5] The document is captioned "This Is A Emergency Request For Administrative Remedy Procedure Pursuant To LSA R.S. 15:1172[B]." It is not an amendment/supplement to ARP LSP-2010-0352 as alleged by the plaintiff in his Complaint.[6] Plaintiff identified Warden Troy Poret, Col. Sharp, Maj. Richardson, Capt. Hunt and Capt. Joseph Dufour as the subjects of the Emergency ARP.[7] Plaintiff complained that he was issued a false disciplinary report by Capt. Hunt in retaliation for refusing to withdraw ARP LSP-2010-0071.[8]

---

[3] Record document number 5-2, pp. 9-10.

[4] Record document numbers 1-1, p. 9.

[5] *Id.* at 35.

[6] *Id.*

[7] *Id.*

[8] *Id.*

Plaintiff also attached as exhibits to his Complaint copies of several letters he sent to Warden Cain and Foster complaining about the delay in processing ARP LSP-2010-0352 and his desire to have the Emergency ARP submitted on February 8 accepted into the grievance procedure.[9] In response to the plaintiff's August 16, 2010 inquiry, he was advised that he had no ARPs on backlog and the last ARP received was dated February 4, 2010.[10] In a letter addressed to Warden Cain dated August 25, 2010, the plaintiff indicated that he had attached a copy of the February 8, 2010 Emergency ARP.[11] In a letter addressed to Warden Cain dated September 19, 2010, the plaintiff inquired whether the copy of the February 8, 2010 Emergency ARP submitted with his August 25, 2010 correspondence had been received.[12] A handwritten notation on the bottom of the plaintiff's letter stated "[a]ttached is the only 2 ARPs for 2010 we have for you in our system."[13] Plaintiff did not include a copy of the attachments as an exhibit.

There is simply no evidence in the record that prison officials actually received the February 8 Emergency ARP. Even assuming prison officials received the copy of the Emergency ARP

---

[9] *Id*. at 43-46, 49-51.

[10] *Id*. at 49.

[11] *Id*. at 50.

[12] *Id*. at 51.

[13] *Id*.

allegedly submitted with the plaintiff's August 25 correspondence, it would have been rejected as time-barred.[14]

For the foregoing reasons, the plaintiff's argument in both his Complaint and his opposition to the defendants' motion for summary judgment that his claims were exhausted in the administrative grievance allegedly submitted on February 8, 2010, is without merit.

Plaintiff also attached as exhibits to his Complaint copies of an ARP he allegedly submitted on December 22, 2010 against Foster complaining that she interfered with his access to the courts by failing to process a grievance submitted on February 8, 2010.[15]

In accordance with the Adult Administrative Remedy Procedures, an inmate commences the administrative remedy procedure by writing a letter to the warden in which he briefly sets out the basis for his claim and the relief sought.[16] The request shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is

---

[14] *See* La. Admin. Code tit. 22, pt. I § 325(F)(1)(a)(x), which provides that the ARP screening officer will screen all requests prior to assignment to the first step. If a request is rejected, it must be for one of the enumerated grounds. A time lapse of more than 30 days between the event and the initial request is one of the grounds for which an administrative grievance can be rejected.

[15] Record document number 1-1, pp. 58-61.

[16] La. Admin. Code tit. 22, pt. I § 325(G)(1)(a).

rejected.[17]  The warden shall respond to the inmate within 40 days from the date the request is received at the first step.[18]  An inmate who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating in the appropriate space on the response form and forwarding it to the ARP screening officer within 5 days of receipt of the decision.[19]  A final decision will be made by the secretary and the inmate will be notified within 45 days of receipt.[20]

Pursuant to the Adult Administrative Remedy Procedures, prison officials had 90 days from initiation to completion of the process, unless an extension of time was granted.[21]  Had prison officials received the administrative grievance allegedly submitted on December 22, 2010, they would have had at least until March 22, 2011, to complete the process.  Plaintiff signed his complaint on March 4, 2011 and it was filed on March 10, 2011.  Therefore, assuming the plaintiff submitted a grievance December 22, 2010, the plaintiff filed his § 1983 complaint against Foster before the delays to complete the administrative process had elapsed.

The summary judgment evidence showed that the plaintiff failed

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at § 325(G)(2)(a).

[20] *Id.*

[21] *See* La. Admin. Code tit. 22, pt. I § 325(G)(4)(a).

to exhaust available administrative remedies regarding the claims raised in the Complaint prior to filing suit, as required by 42 U.S.C. § 1997e(a), except for his claim that Maj. Richardson retaliated against him for refusing to withdraw ARP LSP-2010-0071.

### D. Retaliation By Maj. Richardson

The factual basis for this claim is set out about, but it repeated here for convenience. Plaintiff alleged that on January 24, 2010, he spoke to Capt. Hunt about ARP LSP-2010-0071, in which he complained that he did not want to be assigned to a tier walker job, and advised him that he was unwilling to withdraw the ARP. Plaintiff alleged that on January 28, he was ordered to report to the colonel's office to meet with Maj. Richardson. Plaintiff alleged that Maj. Richardson told him "my advise is that you drop this [ARP LSP-2010-0071] if you know whats best."[22] Plaintiff alleged that he advised Maj. Richardson that he would not withdraw the ARP because he did not want the responsibilities associated with the tier walker job. Plaintiff alleged that Maj. Richardson told him to go pack his belongings and go to Hawk unit. Plaintiff alleged that Warden Poret and Col. Sharp were present and heard the exchange between him and Maj. Richardson.

Plaintiff alleged that on January 28, Capt. Hunt issued him a false disciplinary report in retaliation for what occurred in the

_____

[22] Record document 1-1, Memorandum of Law In Support of Plaintiff's 42 U.S.C. § 1983 Civil Rights Complaint, p. 11.

colonel's office.  Plaintiff alleged that Maj. Richardson, Warden Poret and Col. Sharp were aware that Capt. Hunt issued the false disciplinary report and did nothing to correct the matter.

Maj. Richardson denies that he sent for the plaintiff on January 28 or that he has any personal knowledge regarding the plaintiff's placement in administrative segregation on that date.[23]

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions.  *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, a prisoner must establish four elements  (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter

---

[23] Record document number 11-5, affidavit of Maj. Richardson.

of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary

firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimis acts* that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*).

First, the plaintiff did not allege, nor is there any evidence that Maj. Richardson had anything to do with the actions taken by Capt. Hunt. Plaintiff did not allege that Capt. Hunt was aware of the alleged meeting between the plaintiff and Maj. Richardson on January 28 or that Maj. Richardson ordered Capt. Hunt to issue the plaintiff a disciplinary report on that date.

Although there are factual issues in dispute regarding whether Maj. Richardson actually spoke with the plaintiff regarding withdrawing ARP LSP-2010-0071 and whether he had the plaintiff transferred to Hawk unit in retaliation for refusing to withdraw the administrative grievance, summary judgment is nonetheless appropriate because the evidence fails to create a triable fact issue "that he suffered a qualifying adverse retaliatory act," *Morris*, 449 F.3d at 684, or that he suffered an actual injury

caused by the alleged retaliation. Plaintiff's transfer from Eagle unit to Hawk unit, which is the only retaliatory action alleged against Maj. Richardson, was *de minimis*.

The summary judgment evidence showed that the plaintiff was only temporarily transferred from Eagle unit to Hawk unit for approximately two hours before being transferred to administrative lockdown as a result of the disciplinary report issued by Capt. Hunt.[24] The summary judgment evidence establishes only *de minimis* acts which do not rise to the level of a "qualifying adverse retaliatory act." *Morris*, 449 F.3d at 686.

Defendants are entitled to summary judgment as a matter of law.

RECOMMENDATION

It is the recommendation of the Defendants' Motion for Summary Judgment be granted and this action be dismissed.

Baton Rouge, Louisiana, December 5, 2011.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[24] Record document numbers 13-3, pp. 15 and 53, Personal Property Storage Documentation and Hawk unit log book, respectively.